ACCEPTED
06-14-00094-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
5/19/2015 12:42:04 PM
DEBBIE AUTREY
CLERK

# CASE NO. 06-14-00094-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
5/19/2015 12:42:04 PM
DEBBIE AUTREY
Clerk

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

Nancy Elizabeth Bowman,

Appellant,

vs.

Jerry Davidson and
Diana Davidson,

Appellees.

On Appeal from the 71st Judicial District
Harrison County, Texas
Cause No. 13-0618
The Honorable Brad Morin, Presiding

## APPELLANT'S REPLY BRIEF

JACK M. SANDERS, JR.
109 East Houston Street
P.O. Box 1387
Marshall, Texas 75671-1387
(903) 935-7172
(903) 938-8616 (Fax)
sanders.jack@sbcblobal.net
ATTORNEY FOR APPELLANT

## PREAMBLE

COMES NOW NANCY ELIZABETH BOWMAN, Appellant herein, who hereby respectfully makes and files this, her Reply Brief.

In the interest of clarity, Nancy Elizabeth Bowman will be referred to as "Bowman," while JERRY DAVIDSON, Appellee herein, will be referred to as "Jerry", and DIANA DAVIDSON, the other Appellee herein, will be referred to as "Diana." Collectively, the Appellees will be referred to as "the Davidsons."

In this Reply Brief, the Reporter's Record will be cited by volume and page:line as "___ RR ___:___", and the Clerk's Record will be cited by page as "CR _____." The Appendix will be referred to as "Appx. ___ ___:___".

## TABLE OF CONTENTS

PREAMBLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES CITED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

REPLY ISSUE PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE REPLY ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENTS AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

REPLY ISSUE

The Davidsons' uncontroverted admissions regarding Bubba's dangerous tendencies and warnings to stay away from Bubba prove Bowman's strict liability claim.

A. Strict Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B. Clear, Direct, Positive and Uncontradicted Testimony in Support of Strict Liability Justifies the Reversal of the Jury's Answer on Strict Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

1. The Evidence of the Davidsons' Knowledge of Bubba's Dangerous Propensities is Uncontroverted. . . . . . . . . 5

2. The Evidence that the Davidsons Knew Bubba Had Laid His Teeth on a Human Being Prior to the Attack on Bowman is Uncontroverted.. . . . . . . . . . . . . . . . . . . . . . . . . 9

3. The Davidsons’ Warnings Add Up to More Evidence the Davidsons Knew or Had Reason to Know Bubba had Dangerous Propensities. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

C. The Davidsons Put Forth No Evidence to Controvert the Evidence in Support of Strict Liability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

1. The Davidsons Incorrectly Suggest There Must be a Prior Incident in Bubba’s Past that Would Put the Davidsons on Notice.. 13

2. Bowman and the Davidsons’ Friends Testimony is Irrelevant to What the Davidsons Knew About Bubba.. . . . . . . . . . . . . . . . . . . . . 14

3. The Davidsons Take Dr. Haug’s Testimony Out of Context. . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# INDEX OF AUTHORITIES CITED

TEXAS CASES

SUPREME COURT

*Collora v. Navarro,*
574 S.W.2d 65 (Tex. 1978).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Marshall v. Ranne*,
511 S.W.2d 255 (Tex. 1974).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mendoza v. Fidelity and Guaranty Ins. Underwriters, Inc*.,
606 S.W.2d 692 (Tex. 1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

COURTS OF APPEAL

*Hamilton v. Motor Coach Industries, Inc*.,
569 S.W.2d 571 (Tex. App. — Texarkana 1978, no writ). . . . . . . . . . . . . . . . 2

*Hill v. Spencer & Son, Inc.*, 973 S.W.2d 772
(Tex. App. — Texarkana 1998, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

RULES

TEXAS RULES OF APPELLATE PROCEDURE

Tex. R. App. Pro. 9.4(i)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tex. R. App. Pro. 9.5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

OTHER AUTHORITIES

Restatement (Second) of Torts § 509. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

## REPLY ISSUE PRESENTED FOR REVIEW

Reply Issue

> The Davidsons' uncontroverted admissions regarding Bubba's dangerous tendencies and warnings to stay away from Bubba prove Bowman's strict liability claim.

## SUMMARY OF THE REPLY ARGUMENT

In the Appellees' Brief, the Davidsons claim the evidence at trial "overwhelmingly" supports the jury verdict. But the Davidsons' brief references incorrect standards and irrelevant evidence. Further and most importantly, the Appellees' brief fails to cite any evidence that controverts the Davidsons' own admissions regarding what they knew about Bubba prior to the attack. Even if the Court finds some evidence in the record that Bubba's aggressive, protective and possessive nature did not amount to dangerous tendencies, Bubba's prior bite and clear dislike of strangers put the Davidsons on notice of Bubba's dangerous propensities. The evidence is "overwhelmingly" in support of holding the Davidsons strictly liable for their dog's attack. Accordingly, the jury's verdict on strict liability should be reversed and the cause remanded back to the trial court for a determination of damages.

# ARGUMENT AND AUTHORITIES

## First Reply Issue
(Restated)

> The Davidsons' uncontroverted admissions regarding Bubba's dangerous tendencies and warnings to stay away from Bubba prove Bowman's strict liability claim.

A. Strict Liability

The purpose of imposing strict liability in the context of products liability is to protect the consumer who uses a product for the first time from dangerously defective products. *Hamilton v. Motor Coach Industries, Inc.*, 569 S.W.2d 571, 577 (Tex. App. — Texarkana 1978, no writ). The consumer has a right to expect a safe product from a manufacturer. *Id*. The same rationale is applied in the context of strict liability and domestic animals:

> One who keeps a domestic animal which to his knowledge is vicious, or which though not vicious possesses dangerous propensities that are abnormal, thereby introduces a danger which is not usual to the community, and which, furthermore, is not necessary to the proper functioning of the animal for the purposes which it serves.

Restatement (Second) of Torts § 509 cmt. d. Just as with a product offered into the marketplace, Bowman had a right to expect that the Davidsons' dogs would be friendly, docile dogs or at least to expect if they weren't, that the Davidsons would remove them from the party. Although one of the dogs was friendly, the Davidsons

knew that Bubba was different. Because of their prior knowledge, they were required to put Bubba up and not chance that he would act on his dangerous tendencies.

The strict liability charge in this case was taken from the Texas Supreme Court's opinion in *Marshall v. Ranne*, 511 S.W.2d 255 (Tex. 1974). The question was "did the Davidsons know or have reason to know that their dog had dangerous propensities not normal for a dog?" CR 1201. Thus, Bowman had to prove either: (1) the Davidsons knew that Bubba had dangerous propensities, or (2) the Davidsons had information from which a person of reasonable intelligence would infer that Bubba had a dangerous character. *Id*.

Further, the jury was instructed that it was enough to be held strictly liable, if on other occasions, Bubba exhibited such a tendency to attack human beings or otherwise do harm as should apprise the Davidsons of Bubba's dangerous propensities. *Id.* A tendency to attack humans or otherwise do harm is sufficient to hold a defendant liable. *Id.* Further, any form of ill temper displayed in the presence of man which would apprise a reasonable man that the dog, if uncontrolled, would make an attack is also sufficient. *Id.* "Dangerous Propensities" were also defined as "vicious or aggressive tendencies that are not normal for a dog." *Id*.

B. Clear, Direct, Positive and Uncontradicted Testimony in Support of Strict Liability Justifies the Reversal of the Jury's Answer on Strict Liability

As set forth by the Texas Supreme Court in *Collora v. Navarro*, a directed verdict may be based on the uncontroverted testimony of a party to the lawsuit when the testimony is clear, direct, positive and uncontradicted, is devoid of inconsistencies and is uncontradicted. *Collora*, 574 S.W.2d 65, 69 (Tex. 1978). Similar to the uncontradicted testimony in the *Collora* case, Texas courts have also found a party's uncontradicted testimony can rise to the level of a judicial admission. A judicial admission is conclusive on the party making it and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it. *Mendoza v. Fidelity and Guaranty Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). A party's testimony is given conclusive effect and is treated as a judicial admission if the statement of fact is: (1) made during a judicial proceeding, (2) contrary to an essential fact embraced in the theory of the prosecution or defense of person giving the testimony, (3) deliberate, clear, and unequivocal, giving conclusive effect to the declaration will be consistent with public policy, and (4) not destructive of the opposing party's theory of recovery. *Id.*; *Hill v. Spencer & Son, Inc.*, 973 S.W.2d 772, 776 (Tex. App. — Texarkana 1998, no pet.). The Davidsons' factual statements regarding Bubba's dangerous behavior and why they gave warnings

qualify as judicial admissions, and they justify reversing the jury's verdict on strict liability in this case.

1. The Evidence of the Davidsons' Knowledge of Bubba's Dangerous Propensities is Uncontroverted

At trial, Diana Davidson testified that Bubba acted aggressively toward strangers and Bubba was aggressive, possessive, and protective of her. She repeated the statements throughout her testimony and did not change or contradict her testimony during her case in chief. A few of her exact responses are as follows:

A: The dog is aggressive, you know, if he doesn't know someone.

4 RR 94:10-11.

Q: You said protective also?

A: He is.

Q: So we have aggressive, protective, and possessive; is that correct?

A: Yes.

4 RR 94:15-19.

Q: How do you know about the dog's aggression?

A: He is very verbal when strangers come up. He barks, jumps at the fence, he gives us the indication that, you know, he tells us that someone he is there and all.

4 RR 94:20-23.

Q: So the cause of your warnings is him being aggressive?

A: Yes.

4 RR 95:21-23.

Q: It is strangers that he has a problem with.

A: Yes.

Q: How long have you known that?

A: All of his life.

4 RR 100:21-24.

Q: You just didn't know when the dog might show this aggressiveness and bite somebody?

A: Didn't know when or if.

Q: Okay. But you had reason to know. You didn't know if it was going to happen, but you had reason to know that it would happen; correct?

A: Correct.

Q: Now if you have reason to know that it may happen, that is reason to know that he may bite, then you have reason to know that he may be dangerous; correct?

A: Correct.

4 RR 101:16-102:2. On the other hand, Jerry testified that Bubba was more protective and possessive than aggressive. 4 RR 130:22-131:6, 138:21-25. Jerry liked

the fact that Bubba was protective. 4 RR 139:11-13. He wanted a dog that would protect Diana if an intruder came into the home while he was away, and Bubba gave him that security. *Id*. However, Bubba was never taught to differentiate between when Diana needed protection and when she did not. 5 RR 26:17-27:21. Additionally, Bubba had a clear dislike of strangers that came to the house. 4 RR 136:16-20, 149:25-150:6. Bubba was different and not a normal dog. 4 RR 147:23-148:1. At times, the Davidsons would put Bubba up if Diana could not see him so as to control him. 4 RR 149:17-21. That is also why Diana gives the warnings about Bubba because she cannot see him all of the time. 4 RR 150:3-9. Danny Alexander, a family friend and neighbor, testified that Diana cannot protect someone from Bubba's aggressive nature if she is not around the dog and he believed that Bubba should have been put up. Appx. 2 35:11-36:3; 1 R. Supp. R Index, Video Deposition of Danny Alexander.

In addition to Bubba's protectiveness, Bubba was possessive of Diana. Jerry described specific instances in the past when Bubba would bark and push him away from Diana when they danced and Bubba did the same to anyone else that tried to get between the dog and Diana. 4 RR 138:21-25, 139:5-7. Protective and possessive behavior can be just as dangerous to guests as aggressive behavior as Dr. Haug, Bowman's dog behavior expert, testified, 5 RR 28:7-18, and the Davidsons never

discouraged Bubba's protective or possessive behavior. 4 RR 139:8-11. The following exchange demonstrates that Jerry knew Bubba would be aggressive if he, the dog, thought Diana was threatened.

Q: Do you believe that he would get aggressive if he, the dog, thought that Diana was in danger?

A: Yes.

4 RR 139:20-22.

As a result of the foregoing, the Davidsons admitted they knew for a long time before the attack on Bowman that Bubba:

- disliked strangers and acted aggressively toward them;
- was very protective of Diana;
- was possessive of Diana to the point he barked and pushed people he was familiar with away from her; and
- Diana could not control Bubba if she could not see him.

No one contradicted this testimony at trial. Accordingly, the Davidsons admitted at trial they knew Bubba was aggressive toward strangers, protective, possessive, and difficult to control outside of Diana's presence prior to the attack on Bowman.

2. The Evidence that the Davidsons Knew Bubba Had Laid His Teeth on a Human Being Prior to the Attack on Bowman is Uncontroverted

In addition to the Davidsons' testimony regarding Bubba's aggressive, protective, and possessive behavior, the Davidsons also admitted they knew Bubba had previously bitten their friend, Billy Strong ("Strong"). Although the Davidsons call it a "nip," their uncontroverted testimony shows that Bubba used his teeth on another human being causing a red mark and bruise prior to biting Bowman. In fact, Diana admitted she witnessed the bite. 4 RR 99:17-19. By refusing to call the incident a "bite," the Davidsons are able to say that Bubba never bit anyone before Bowman. But the truth is Bubba intentionally ran after Strong and bit him on the leg. Appx. 1 30:21-31:1. Although Bubba may not have been motivated by protectiveness when he bit Strong,[1] there is no dispute that Bubba laid teeth on a human being hard enough to cause a mark and bruise. 4 RR 100:2-10. No one can say for sure why Bubba latched on to Strong. But the "bite," "nip," or whatever you want to call it, should have put the Davidsons on notice that Bubba, without provocation, could bite a human being and leave a mark. It is reason to know.

[1]The Davidsons suggest that Bubba was just following his herding instincts when he "nipped" Strong, but Dr. Haug testified that cattle dogs are bred to drive cattle not people and dogs are certainly smart enough to know the difference. 5 RR 38:13-15. Further, this was the only instance that Bubba ever "nipped" a person so Bubba, being at least 9 years old when he "nipped" Strong likely understood the difference between cattle and a person.

3. The Davidsons' Warnings Add Up to More Evidence the Davidsons Knew or Had Reason to Know Bubba had Dangerous Propensities

Last and most importantly, the Davidsons did not cite any evidence in their Brief that contradicted the fact that they gave all new guests a serious warning not to interact with Bubba and that the warning was for the safety of guests and to prevent a bite. That is what a warning is for, to avoid danger. Diana stated the following at trial:

Q: It is fair to say you didn't want to take a chance of the dog biting somebody?

A: That is right.

4 RR 95:9-11.

Q: Your warning is to avoid a bite; correct?

A: Yes.

4 RR 95: 24-25.

Q: That is why you give the warnings to avoid a bite; right?

A: Right.

4 RR 114:2-4. Jerry testified as follows:

Q: And you agree with your wife when she says those warnings or the reason that gave warnings we didn't want him to bite anybody?

A: That is right.

10

4 RR 131:12-15.

> Q: If you give warnings and the reason that you are giving those warnings is because you don't want the dog to bite?
>
> A: Right

4 RR 131:20-23.

> Q: Well, that is why you gave the warnings is because you knew that the propensity was there for it to happen?
>
> A: Yes, there is the reason that they give the warning.

4 RR 140:10-13.

In the Appellees' Brief, the Davidsons claim "[t]he warnings given to visitors are not because of any history of the dog, but because Bubba is very protective of Diana and if he does not know someone, he will bark at them." Appellees' Brief, pg. 6. First of all, protectiveness and a dislike of strangers is part of Bubba's history. Second, the Davidsons do not cite any specific testimony that supports this was the reason for the warnings despite Bowman's numerous cites to testimony which shows the warnings were to prevent a bite.

In the Appellees' Brief, the Davidsons also try to minimize the warnings by citing Diana's testimony that she gave the warning to new guests about all of their dogs. Appellees' Brief, pg. 6. However, as the exchange immediately after the cited testimony in the Davidsons' brief demonstrates, the discussion was clearly about

Bubba. 4 RR 95:19-25. Bubba was different and not what is considered a normal dog. 4 RR 147:23-148:1. The warnings were because of Bubba. 5 RR 122:16-22. Diana stated the following:

Q:   So his aggressiveness is to the point that you give a warning?

A:   I give a warning with all of my dogs.

Q:   Okay, but we are talking about Bubba here?

A:   Yea, I know.

Q:   So the cause of your warning is him being aggressive?

A:   Yes.

Q:   Your warning is to avoid a bite; correct?

A:   Yes.

4 RR 95:16-25.

In Dr. Haug's opinion, the fact that the Davidsons spent years warning people about Bubba's behavior and telling people not to look at him, don't touch him, don't pet him showed the Davidsons knew something about Bubba that predicted something bad would happen. 5 RR 23:21-24. Thus, the warnings themselves prove that the Davidsons knew Bubba had dangerous propensities.

## C. The Davidsons Put Forth No Evidence to Controvert the Evidence in Support of Strict Liability

In the Appellees' Brief, the Davidsons claim the record "reveals overwhelming evidence that Bubba never exhibited dangerous or vicious propensities." Appellees' Brief, pg. 4. It is as if the Davidsons did not attend the trial or review the record. Briefly, Bowman will demonstrate why the points made in the Appellees' Brief are either blatantly incorrect or irrelevant to whether the Davidsons had or had reason to know of Bubba's dangerous propensities.

### 1. The Davidsons Incorrectly Suggest There Must be a Prior Incident in Bubba's Past that Would Put the Davidsons on Notice

In the Appellees' Brief, the Davidsons argue that "there were no prior incidents involving Bubba that would have put a reasonable person on notice that there was any likelihood or any probability that Bubba would ever bite or attack anyone." Appellees' Brief, pg. 4. First, there does not have to be a prior incident in order to find a defendant strictly liable. That is the point being made in the comment section of Section 509 of the Restatement (Second) Torts. Further, "reason to know" was defined for the jury as "information from which a person of reasonable intelligence would infer that the fact in question exists." CR 1201. There does not need to be a prior bite or specific instance which put the Davidsons on notice of Bubba's

dangerous propensities. Accordingly, tendencies, without a prior incident, can support a finding of strict liability.

Second, this case involves tendencies *and* prior incidents that should have put the Davidsons on notice. The Strong "nip" should have told the Davidsons that Bubba is clearly aggressive enough to bite a human being, whatever the motivation. Additionally, Bubba's prior incidents of aggressive behavior with strangers and when Bubba would push Jerry away from Diana should have put the Davidsons on notice that Bubba could act aggressively with a stranger if he thought that a stranger was too close to Diana. 4 RR 138:21-25, 139:5-7; 5 RR 28:7-18. Accordingly, the Davidsons' prior incident standard is improper.

2. Bowman and the Davidsons' Friends Testimony is Irrelevant to What <u>the Davidsons Knew About Bubba</u>

In the Appellees' Brief, the Davidsons rely on Bowman's testimony regarding how Bubba acted the night of the attack and their close friends' testimony regarding Bubba's behavior. Appellees' Brief, pgs. 5-7. Bowman's testimony regarding Bubba's behavior has no bearing on what the Davidsons knew or had reason to know about Bubba's dangerous propensities.

Additionally, the Davidsons' friends' testimony of what they observed is irrelevant. Dogs act differently with frequent visitors than with strangers. 5 RR

18:15-19:5. Just because the dog is okay with frequent visitors does not mean the dog is going to be okay with a new person. *Id*. Even the Davidsons admit that it is strangers that Bubba has a problem with. 4 RR 100-21-22. Bubba has no problem with people he knows. 4 RR 100:17-2. Further, the friends' testimony is not sufficient to contradict the Davidsons' own testimony regarding Bubba's prior behavior.

Lastly, although the majority of the Davidsons' friends' testimony was positive (as you would expect), even they made some statements at trial which revealed they even knew about Bubba's dangerous propensities. 5 RR 25:10-15. The Davidsons want to paint a picture of a dog that is described as aggressive based on his barking at the fence, but even the Davidsons' friends made statements at trial which show Bubba's volatile nature. Anitta Scott, the Davidsons' next door neighbor and a person very familiar to Bubba, covers Bubba's eyes when she pets him and will not pick up a napkin off the floor when Bubba is present. 5 RR 143:4-15, 5 RR 144:16-25. Strong, a long time friend of the Davidsons and a neighbor, believes Bubba can be dangerous and he had a real concern about Bubba biting people. Strong has known Bubba all his life. Strong stated the following in his deposition played to the jury:

Q: Okay. Do you believe Bubba is dangerous?

A: I believe he can be.

Q: Okay.

A: Yes.

Q: Obvious – obviously, you know, you know he's now bitten, right?

A: Yes.

Q: Okay. Before he bit Ms. Bowman, did you have any real concern about him biting people?

A: Yes.

Q: Okay. That he – that he might?

A: Yeah, that he might. I . . .

Q: And what –what made you sort of feel that way?

A: Well, he liked to nip me that day, so, you know, I'm thinking, well, he nipped me, you know.

Q: He might get somebody else?

A: Yeah. He might get somebody. I've known him, you know, since he was brought there, a puppy, so . . .

Appx. 1 37:11-38:4. Danny Alexander, another long-time friend and neighbor, testified by deposition to the following:

Q: Ms. Davidson can't be around the dog all the time; is that correct?

A: Right.

Q: And the period of time when she's not around the dog, the dog still has this aggressive nature; correct?

A: Correct.

Q: And if Ms. Davidson's not around the dog, she can't protect someone else from the dog being aggressive, can she?

A: No.

Q: Is that another reason the dog should have been put up?

A: Well, if they think it needs to be put up, yes.

Q: Do you think it needed to be put up?

A: I would have.

Appx. 2 35:11-36:3. Bowman contends the Davidsons' friends' testimony is not relevant to the Davidsons' knowledge, but if the Davidsons want to use their friends testimony as evidence of how others observed Bubba, then the Court should know that their close friends even hinted that Bubba had a dangerous nature that had to be controlled by Diana.

3. The Davidsons Take Dr. Haug's Testimony Out of Context

Lastly, the Davidsons rely on portions of Dr. Haug's testimony for support that Bubba did not have dangerous propensities and the Davidsons did not know about them. Appellees' Brief, pgs. 9-11. Dr. Haug stated she felt, based on her review of

the Davidsons' deposition testimony, that they had adequate knowledge to know that something bad was going to happen. 5 RR 14:3-12, 5 RR 17:3-7, 5 RR 24:2-4, 5 RR 24:17-22. It is the reason she believes the Davidsons warned people for so long about Bubba. 5 RR 14:23-24. People who have normal, friendly dogs do not warn visitors not to interact with them. 5 RR 17:8-14. They felt so adamantly about their warnings that their friends repeated the warnings even before new guests arrived at the home. 5 RR 25:4-7. Further, the Davidsons also put Bubba up when children came over. 5 RR 19:11-20:4. There had to be something bad the Davidsons were trying to avoid. 5 RR 17:3-7.

Additionally, the Davidsons claim that Dr. Haug "agreed that the nipping at the heel incident with Strong, or nipping at the heels in general, for herding dogs is second nature to them." Appellees' Brief, pg. 9. But Dr. Haug testified that Blue heelers are bred to herd cattle and not people and they are certainly smart enough to know the difference. 5 RR 38:10-14.

Next, the Davidsons state that Dr. Haug only went as far as to say that the Davidsons knew or had reason to know that something "may" happen, and Dr. Haug said that the Davidsons probably did not foresee this severe of a bite occurring. Appellees' Brief, pg. 10. The strict liability standard is not whether the Davidsons know or have reason to know a "severe" bite will happen. Further, Dr. Haug testified

that the Davidsons warned guests because they knew something bad was going to happen. 5 RR 17:3-7, 24:1-4. They may not know exactly what type of bad incident will happen, but the Davidsons felt confident enough that something bad would happen to make sure the guest does not interact with the dog. Something bad with a dog is generally a bite. Based on her experience, people generate warnings because they know something bad happened in a similar circumstance in the past. 5 RR 17:3-14. Although Dr. Haug did state, as the Davidsons contend, that alarm barking is not necessarily problematic, she also testified that Bubba's aggressive, protective, and possessive behavior is not normal to domesticated dogs. 5 RR 23:14-16.

Finally, the Davidsons claim that Dr. Haug's opinion falls short of stating there was a reasonable probability that Bowman would be bit by Bubba. Appellees' Brief, pg. 10. The Davidsons are attempting to impose a negligence standard to a strict liability claim. Whether it was reasonably foreseeable that Bubba would bite Bowman is not the question the jury was asked to answer. Instead, they were asked whether the Davidsons knew or had reason to know Bubba had dangerous propensities. CR 1201. There is no requirement that there be a reasonable probability that Bubba would bite Bowman. This is a case that involves an animal, and animals, to a certain extent, are unpredictable. That is why strict liability is available to a plaintiff. If a pet owner has a domesticated animal that has dangerous

tendencies that could lead to a bite, the owner should put the dog up. It should not be a stranger's responsibility to know what kind of nature or behaviors a person's pet has. Accordingly, the Davidsons failed to present evidence to controvert the admissions made at trial by the Davidsons, and Bowman is entitled to the reversal of the jury's verdict on strict liability.

## CONCLUSION

In summary, the question the jury was asked to answer was "did the Davidsons know or have reason to know the dog had dangerous propensities not normal to other dogs?" The Davidsons warned guests to stay away from Bubba to avoid a bite and for the safety of guests. Why would the Davidsons warn guests if they had no knowledge of Bubba's dangerous propensities? People do not warn guests about dogs unless they have reason to be concerned about their dog's behaviors. The undisputed fact that the Davidsons warned guests is an admission of the elements of strict liability. It conclusively proves strict liability or the great weight and preponderance of the evidence as a whole weighs in favor of strict liability. Accordingly, Bowman is entitled to reversal on jury verdict regarding strict liability and judgment rendered for Bowman as to strict liability.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Bowman prays the judgment be in all respects REVERSED with regard to dangerous propensities, as to either or both the Davidsons, and producing cause, and the cause be REMANDED back to the trial court for a determination of damages, for the reasons set forth herein.

In the alternative, Bowman prays the judgment be REVERSED as to either or both the Davidsons as to dangerous propensities and the cause be REMANDED back to the trial court for further proceedings as to damages, as the Court sees fit, for the reasons set forth herein. Further and in the alternative, Bowman prays for the cause to be REMANDED back to the trial court for a new trial, if necessary.

Bowman prays for such other and further relief, general or special, in law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

*/s/Jack M. Sanders, Jr.*

JACK M. SANDERS, JR.
109 East Houston Street
P.O. Box 1387
Marshall, Texas 75671-1387
(903) 935-7172
(903) 938-8616 (Fax)
sanders.jack@sbcblobal.net
ATTORNEY FOR APPELLANT

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that, pursuant to Tex. R. App. Pro. 9.4(i)(3), the number of words in this document are 4,250 based upon the word counter of Microsoft Word.

*/s/Jack M. Sanders, Jr.*
Jack M. Sanders, Jr.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, pursuant to Tex. R. App. Pro. 9.5(a), a true and correct copy of the foregoing Reply Brief has been sent to the following counsel of record through the Court's on-line filing system, on this, the 18th day of May, 2015:

Alan E. Brown
Boyd & Brown, P.C.
1215 Pruitt Place
Tyler, Texas 75703
Counsel for the Appellees

*/s/Jack M. Sanders, Jr.*
Jack M. Sanders, Jr.

CASE NO. 06-14-00094-CV

---

IN THE SIXTH COURT OF APPEALS
TEXARKANA, TEXAS

---

Nancy Elizabeth Bowman,

Appellant,

vs.

Jerry Davidson and
Diana Davidson,

Appellees.

---

On Appeal from the 71st Judicial District
Harrison County, Texas
Cause No. 13-0618
The Honorable Brad Morin, Presiding

---

# REPLY BRIEF APPENDIX

---

JACK M. SANDERS, JR.
109 East Houston Street
P.O. Box 1387
Marshall, Texas 75671-1387
(903) 935-7172
(903) 938-8616 (Fax)
sanders.jack@sbcblobal.net
ATTORNEY FOR APPELLANT

# APPENDIX TABLE OF CONTENTS

DOCUMENT TAB

Transcript Excerpts from the Video Deposition of Billy Strong . . . . . . . . . . . . . . . . 1

Transcript Excerpts from the Video Deposition of Danny Alexander. . . . . . . . . . . . 2

CAUSE NO. 13-0618

| | | |
|---|---|---|
| NANCY ELIZABETH BOWMAN, Plaintiff, | ) | IN THE DISTRICT COURT OF |
| VS. | ) | HARRISON COUNTY, TEXAS |
| JERRY DAVIDSON AND DIANA DAVIDSON, Defendants. | ) | 71ST JUDICIAL DISTRICT |

*******************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

BILLY STRONG

NOVEMBER 18, 2013

VOLUME 1 OF 1

COPY

*******************************************************

ORAL AND VIDEOTAPED DEPOSITION OF BILLY STRONG, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 18th day of November, 2013 from 4:34 p.m. to 5:43 p.m., before Terri Lynn Smith, CSR in and for the State of Texas, reported by computerized stenotype machine, at the offices of Mr. Jack Sanders, Jr., 109 East Houston Street, Marshall, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Electronically signed by Terri Lynn Smith (601-237-608-4107) 16a5ed0f-8516-4c02-81cc-9c8298f78b4c

A P P E A R A N C E S

MR. JACK SANDERS, JR.
ATTORNEY AT LAW
109 East Houston Street
Marshall, Texas  75671
Telephone:  (903) 935-7172
Facsimile:  (903) 938-8616

     COUNSEL FOR PLAINTIFF:  Nancy Elizabeth Bowman


MR. ALAN E. BROWN
BOYD & BROWN, P.C.
1215 Pruitt Place
Tyler, Texas  75703
Telephone:  (903) 526-9000
Facsimile:  (903) 526-9001

     COUNSEL FOR DEFENDANTS:  Jerry Davidson and
                             Diana Davidson




ALSO PRESENT:  Mr. Dart Leigh, videographer
               Ms. Nancy Elizabeth Bowman

Electronically signed by Terri Lynn Smith (601-237-608-4107)          16a5ed0f-8516-4c02-81cc-9c8298f78b4c

Q. Okay.

A. Okay. That's when I signed it.

Q. So -- so you told Jack or someone in his office --

A. Yes.

Q. -- about what happened, and somebody wrote it out and then you signed it saying, Yeah, that's --

A. Yes.

Q. -- that's what happened?

A. Yes.

Q. Okay. Okay. Now, when it says that -- what does it say? It says, I was bitten or the dog bit me. What's the language there?

A. "Nipped me on the back of my leg."

Q. Okay. Do you remember the occasion, sort of what -- I mean, were you just sitting around or can you -- do you remember what was happening that the dog did that?

A. Yes.

Q. What -- tell us -- tell us what occurred.

A. They had had a repairman there to work on their heater, and he had gotten up and left and forgot his bag of tools and was out in his car fixing to leave, and Diana asked me to take the bag of tools out. So I grabbed the tools and I took off at a trot towards the

front door, and Bubba got me.

Q. Okay.

A. He nipped me on the back of the leg.

Q. All right. Did -- did it break the skin?

A. No.

Q. Okay. Just left a red mark or --

A. Yeah; bruised, but....

Q. Okay. Did you seek any medical attention?

A. No.

Q. Okay. Do you remember when he did that, did Diana respond? Did she holler at the dog or anything? Do you remember?

A. Yes. She fussed at him.

Q. Okay. Other than that occurrence -- well, let me strike that.

Had you ever known Bubba to do that, actually, you know, bite, get ahold of somebody before?

A. No.

Q. Had you ever observed Bubba out working, messing with the cows?

A. Not really, no.

Q. Okay.

A. He doesn't go out there much.

Q. Okay. Now, do you know what breed of dog Bubba is?

Electronically signed by Terri Lynn Smith (601-237-608-4107)          16a5ed0f-8516-4c02-81cc-9c8298f78b4c

anybody gave Ms. Bowman, any comments about things that had been said before the bite occurred?

A. This was after?

Q. After the bite --

A. Huh-uh.

Q. -- do you remember any conversations --

A. No.

Q. -- about things that were said to Ms. Bowman or by Ms. Bowman before the bite about the dogs?

A. No. I don't -- I don't recall.

Q. Okay. Do you believe Bubba is a dangerous dog?

A. I believe he can be.

Q. Okay.

A. Yes.

Q. Obvious -- obviously, you know, you know he's now bitten, right?

A. Yes.

Q. Okay. Before he bit Ms. Bowman, did you have any real concern about him biting people?

A. Yes.

Q. Okay. That he -- that he might?

A. Yeah, that he might. I....

Q. And what -- what made you sort of feel that way?

A. Well, he liked to nip me that day, so, you

Electronically signed by Terri Lynn Smith (601-237-608-4107)

16a5ed0f-8516-4c02-81cc-9c8298f78b4c

know, I'm thinking, well, he nipped me, you know.

Q. He might get somebody else?

A. Yeah. He might get somebody. I've known him, you know, since he was brought there, a puppy, so....

Q. How long was it from the time when he nipped you until he bit Ms. Bowman?

A. Maybe a year.

Q. Okay.

A. That's a guess.

Q. In that year or so, did any -- was there any other incident, anything else happen that made you any more concerned or was that sort of it?

A. No. That was it.

Q. Okay. Did Diana ever say anything to you after he bit you that she was more concerned or anything or --

A. No.

Q. Okay. Does the -- does Bubba respond to Diana? In other words, if Diana gives him a command or whatever, does the dog respond to Diana?

A. Yes.

Q. How about to Jerry?

A. Yes.

Q. Equally the same or more one than the other?

A. I don't -- I couldn't tell you that.

Q. Okay.

Electronically signed by Terri Lynn Smith (601-237-608-4107)        16a5ed0f-8516-4c02-81cc-9c8298f78b4c

CAUSE NO. 13-0618

NANCY ELIZABETH BOWMAN,      )  IN THE DISTRICT COURT OF
      Plaintiff,             )
                             )
VS.                          )  HARRISON COUNTY, TEXAS
                             )
JERRY DAVIDSON AND           )
DIANA DAVIDSON,              )
      Defendants.            )  71ST JUDICIAL DISTRICT


REPORTER'S CERTIFICATION
DEPOSITION OF BILLY STRONG
NOVEMBER 18, 2012

I, TERRI LYNN SMITH, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, BILLY STRONG, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That examination and signature of the witness to the deposition transcript was waived by the witness and agreement of the parties at the time of the deposition;

That the original deposition was delivered to Mr. Alan E. Brown;

That the amount of time used by each party at the deposition is as follows:

Mr. Jack Sanders, Jr. - 00 hours, 20 minutes

Mr. Alan E. Brown - 00 hours, 45 minutes

Electronically signed by Terri Lynn Smith (601-237-608-4107)      16a5ed0f-8516-4c02-81cc-9c8298f78b4c

That $297.60 is the deposition officer's charges to the Defendant for preparing the original deposition transcript and any copies of exhibits;

That pursuant to information given to the deposition officer at the time said testimony was taken, the following includes all parties of record:

Mr. Jack Sanders, Jr., Attorney for Plaintiff, Nancy Elizabeth Bowman;

Mr. Alan E. Brown, Attorney for Defendants, Jerry Davidson and Diana Davidson.

That a copy of this certificate was served on all parties shown herein on 11/26/2013 and filed with the Clerk pursuant to Rule 203.3.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Certified on this the 25th day of November, 2013.

TERRI LYNN SMITH, Texas CSR 6[illegible]
Expiration Date: 12/31/14
Deposition Resources, Inc.
Firm Registration No.: 409
515 North Church Street
Palestine, Texas 75801
Telephone: (903) 729-3289
Facsimile: (903) 727-0986

Electronically signed by Terri Lynn Smith (601-237-608-4107)

16a5ed0f-8516-4c02-81cc-9c8298f78b4c

CAUSE NO. 13-0618

| | | |
|---|---|---|
| NANCY ELIZABETH BOWMAN, Plaintiff, | ) | IN THE DISTRICT COURT OF |
| VS. | ) | HARRISON COUNTY, TEXAS |
| JERRY DAVIDSON AND DIANA DAVIDSON, Defendants. | ) | 71ST JUDICIAL DISTRICT |

*************************************************************

ORAL AND VIDEOTAPED DEPOSITION OF

DANNY ALEXANDER

NOVEMBER 19, 2013

VOLUME 1 OF 1

COPY

*************************************************************

ORAL AND VIDEOTAPED DEPOSITION OF DANNY ALEXANDER, produced as a witness at the instance of the Defendant, and duly sworn, was taken in the above-styled and numbered cause on the 19th day of November, 2013 from 3:05 p.m. to 3:49 p.m., before Terri Lynn Smith, CSR in and for the State of Texas, reported by computerized stenotype machine, at the offices of Mr. Jack Sanders, Jr., 109 East Houston Street, Marshall, Texas, pursuant to the Texas Rules of Civil Procedure and the provisions stated on the record or attached hereto.

APPEARANCES

MR. JACK SANDERS, JR.
ATTORNEY AT LAW
109 East Houston Street
Marshall, Texas 75671
Telephone: (903) 935-7172
Facsimile: (903) 938-8616

COUNSEL FOR PLAINTIFF: Nancy Elizabeth Bowman

MR. ALAN E. BROWN
BOYD & BROWN, P.C.
1215 Pruitt Place
Tyler, Texas 75703
Telephone: (903) 526-9000
Facsimile: (903) 526-9001

COUNSEL FOR DEFENDANTS: Jerry Davidson and Diana Davidson

ALSO PRESENT: Mr. Dart Leigh, videographer
Ms. Nancy Elizabeth Bowman

Electronically signed by Terri Lynn Smith (601-237-608-4107) 20f4b2cc-437d-46fe-9a91-09eec9c3359c

INDEX

PAGE

Appearances.......................................... 2

EXAMINATION

THE WITNESS: DANNY ALEXANDER

Examination by Mr. Brown...................... 4

Examination by Mr. Sanders.................... 28

Examination by Mr. Brown...................... 36

Examination by Mr. Sanders.................... 38

Witness's Signature Page/Corrections.............. 42

Reporter's Certificate........................... 44

EXHIBITS

NO. DESCRIPTION PAGE

6 Printed Copies of Color Photographs.......... 15

REPORTER'S NOTE

Quotation marks are used for clarity and do not necessarily indicate a direct quote.

Electronically signed by Terri Lynn Smith (601-237-608-4107) 20f4b2cc-437d-46fe-9a91-09eec9c3359c

can control the dog, but when I can't see him, I can't control him. Do you agree with that?

A. Yes.

Q. And is that the reason the dog should have been put up, because of the interactions that the dog may have with a stranger when Mrs. Davidson can't see the dog?

MR. BROWN: Object do form.

Q. (By Mr. Sanders) Go ahead and answer.

A. Run that by again.

Q. All right. Ms. Davidson can't be around the dog all the time; is that correct?

A. Right.

Q. And the period of time when she's not around the dog, the dog still has this aggressive nature, correct?

A. Correct.

Q. And if Ms. Davidson's not around the dog, she can't protect someone else from the dog being aggressive, can she?

A. No.

Q. Is that another reason the dog should have been put up?

MR. BROWN: Object to form.

Q. (By Mr. Sanders) Go ahead and answer, please.

Electronically signed by Terri Lynn Smith (601-237-608-4107)          20f4b2cc-437d-46fe-9a91-09eec9c3359c

A. Well, if they think it needs to be put up, yes.
Q. Do you think it needed to be put up?
A. I would have.
Q. All right, sir. Thank you. That's fair.
MR. SANDERS: I pass the witness.
(Examination concluded at 3:43 p.m.)

EXAMINATION

BY MR. BROWN:
Q. Mr. Alexander, you said you would have put him up, but there wasn't anything that had happened that night that made you think that we ought to put him up tonight, correct?
A. Correct.
Q. Okay. So it's just the fact that you knew that he had grabbed ahold of Billy before, so you knew obviously, yeah, he -- he might bite, he did bite at Billy? Would that be the basis of your thoughts that, you know, maybe, you know, if a new person is there, maybe you ought to just put him up? Is that what you're saying?
A. Yes.
Q. Okay. That evening, did you make any comment to Diana or Jerry about, you know, Hey, why -- you think we ought to put the dog up, or do -- did you express any -- any kind of concern about the dogs being out that



Electronically signed by Terri Lynn Smith (601-237-608-4107)
20f4b2cc-437d-46fe-9a91-09eec9c3359c

CAUSE NO. 13-0618

| | | |
|---|---|---|
| NANCY ELIZABETH BOWMAN, Plaintiff, | ) | IN THE DISTRICT COURT OF |
| VS. | ) | HARRISON COUNTY, TEXAS |
| JERRY DAVIDSON AND DIANA DAVIDSON, Defendants. | ) | 71ST JUDICIAL DISTRICT |

REPORTER'S CERTIFICATION
DEPOSITION OF DANNY ALEXANDER
NOVEMBER 19, 2013

I, TERRI LYNN SMITH, Certified Shorthand Reporter in and for the State of Texas, hereby certify to the following:

That the witness, DANNY ALEXANDER, was duly sworn by the officer and that the transcript of the oral deposition is a true record of the testimony given by the witness;

That the deposition transcript was submitted on 12/12/2013 to the witness or to the attorney for the witness for examination, signature and return to me by 1/3/2014, ~~2013~~.

That the amount of time used by each party at the deposition is as follows:

Mr. Jack Sanders, Jr. - 00 hours, 14 minutes

Mr. Alan E. Brown - 00 hours, 30 minutes

That pursuant to information given to the deposition officer at the time said testimony was taken,

the following includes counsel for all parties of record:

Mr. Jack Sanders, Jr., Attorney for Plaintiff, Nancy Elizabeth Bowman;

Mr. Alan E. Brown, Attorney for Defendants, Jerry Davidson and Diana Davidson.

I further certify that I am neither counsel for, related to, nor employed by any of the parties or attorneys in the action in which this proceeding was taken, and further that I am not financially or otherwise interested in the outcome of the action.

Further certification requirements pursuant to Rule 203 of TRCP will be certified to after they have occurred.

Certified to on this 27th day of November, 2013.

TERRI LYNN SMITH, Texas CSR 67
Expiration Date: 12/31/14
Deposition Resources, Inc.
Firm Registration No.: 409
515 North Church Street
Palestine, Texas 75801
Telephone: (903) 729-3289
Facsimile: (903) 727-0986

FURTHER CERTIFICATION UNDER RULE 203 TRCP

The original deposition was/was not returned to the deposition officer on ____________________;

Electronically signed by Terri Lynn Smith (601-237-608-4107)

20f4b2cc-437d-46fe-9a91-09eec9c3359c

If returned, the attached changes and signature page contains any changes and the reasons therefor;

If returned, the original deposition was delivered to Mr. Alan E. Brown, Custodial Attorney;

That $__________ is the deposition officer's charges to the Defendant for preparing the original deposition transcript and any copies of exhibits;

That the deposition was delivered in accordance with Rule 203.3 and that a copy of this certificate was served on all parties shown herein on and filed with the Clerk.

Certified to by me this ____ day of _________________, 2013.

______________________________
TERRI LYNN SMITH, CSR 6781
Expiration Date: 12/31/14
Deposition Resources, Inc.
Firm Registration No.: 409
515 North Church Street
Palestine, Texas 75801
Telephone: (903) 729-3289
Facsimile: (903) 727-0986

Electronically signed by Terri Lynn Smith (601-237-608-4107)
20f4b2cc-437d-46fe-9a91-09eec9c3359c